**UNITED STATES of America,
Plaintiff,**

v.

**Peggy Ann RAY, Defendant.**

**No. 4:04–CR–157.**

United States District Court,
S.D. Iowa.

July 7, 2005.

Benjamin J. Stansberry, United States Attorney, Des Moines, IA, for USA, Plaintiff.

Dennis E. McKelvie, McKelvie Law Office, Grinnell, B. John Burns, III, Federal Public Defender, Des Moines, IA, for Peggy Ann Ray, Defendant.

SENTENCING MEMORANDUM

PRATT, District Judge.

## I. INTRODUCTION

Before the Court is the matter of sentencing the Defendant, Peggy Ann Ray. On December 28, 2004, the Defendant pleaded guilty to one count of conspiracy to manufacture methamphetamine. *See* 21 U.S.C. §§ 846, 841(b)(1)(A). In fashioning a sentence that is "sufficient, but not greater than necessary, [the Court must consider] the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1). Further, the Court must consider the need for the sentence imposed, in that it should: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal con-

---

duct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). Along with these factors, the Court must determine the kinds of sentences available, including those advised by the Sentencing Commission. 18 U.S.C. §§ 3553(a)(3)-(5); *see United States v. Yahnke*, 395 F.3d 823, 824 (8th Cir.2005) (requiring that a sentencing court "must consult Guidelines and take them into account when sentencing"); *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005) (reviewing a district court's interpretations of the Guidelines *de novo*, factual findings for clear error, and the final sentencing determination for reasonableness). The Court must also "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" and assess the need to provide restitution to victims. 18 U.S.C. §§ 3553(a)(6), (7). Finally, because a term of imprisonment is available in this case, the Court must be mindful that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

## II. DISCUSSION

### A. *Advisory Guidelines Range*

The Court adopts the Presentence Report Sentencing Guidelines calculation that is based on, among other things, the parties' stipulation to the drug amount for which the Defendant is responsible— 223.46 grams of actual methamphetamine. This provides a base offense level of 34. The level based on drug amount is reduced by four levels because the Court finds that the Defendant qualifies for a reduction under U.S.S.G. § 3B1.2(a), for being more than a minimal participant in the conspiracy, but less than a minor participant. *See* U.S.S.G. § 2D1.1(a)(3). Nevertheless, be-

cause the manufacture of methamphetamine created a substantial risk of harm to the life of minor children in this case, the Defendant is subject to a six level increase, bringing the base offense level to thirty-six. *See* U.S.S.G. § 2D1.1(b)(5)(C). Finally, the Court subtracts three levels for the Defendant's mitigating role under U.S.S.G. § 3B1.2(a), and another three levels for acceptance of responsibility, for an adjusted offense level of thirty. The Defendant's criminal history category is V. This leaves an advisory Guidelines range of 151–188 months imprisonment. Even though a mandatory minimum of 240 months applies in this case, the Guidelines calculation is imperative in light of the government's motion for downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), which provides the Court the opportunity to sentence the Defendant below the statutory minimum. In its motion, the government recommends a thirty-percent reduction from the statutory minimum, which would result in a sentence of 168 months. The Defendant makes no motions for departure under the Guidelines.

### B. *Imposition of Sentence*

#### 1. *The nature and circumstances of the offense.*

On December 28, 2004, the Defendant pleaded guilty to participating in a conspiracy to manufacture methamphetamine during the month of April 2004. The Defendant's involvement in the conspiracy ended on April 27, 2004, when she was stopped by law enforcement officials after making suspicious purchases of pseudoephedrine, a known methamphetamine precursor. As mentioned, the manufacture of methamphetamine took place near a co-conspirator's children, subjecting the Defendant to a six level offense increase. No other aggravating factors are present. None of the offense conduct involved violence, nor were firearms present. The

offense level is derived solely, aside from the six level increase, from the stipulated drug amounts.

## 2. The history and character of the defendant.

The Defendant's history reflects a disheartening litany of choices predicated on abuse, severe drug addiction, and hopelessness. The Defendant's criminal behavior begins later in life, at the age of twenty-eight years of age, six years after the father of her first five children was killed by a drunken driver. This began a string of drug offense violations, theft charges, and miscellaneous crimes—all stemming from the Defendant's substance abuse. The Defendant's criminal history, however, shows no indication of violence or weapons use. Indeed, the Defendant, herself, has been the victim of several episodes of violence throughout her lifetime, including being raped at least three times and being involved in several instances of generalized domestic abuse. Over time, the Defendant has lost custody of all seven of her children. The Defendant's work history also reflects a life in complete disarray and without direction. The Defendant has undergone psychiatric evaluation. Provisional diagnostic impressions were Dysthymia [1], polysubstance abuse, and personality disorder, along with attendant legal, family, and relational problems.

Nevertheless, as a witness in the trial of a co-conspirator, the Defendant displayed the courage and composure necessary to provide evidence on behalf of the government. The Court found the Defendant's answers truthful and demonstrative of natural intelligence. The Defendant, despite her addictions and mental health problems, obtained her GED while detained in Mt. Pleasant, Iowa. Academic records from the late 1980s show a clear ability to handle collegiate-level academic study. The Defendant is now thirty-eight years of age. She manifests the terrible toll that can accrue when drug addictions and mental health problems are left unattended in the life of an individual.

## 3. The need for the sentence imposed.

The Court is left with the firm impression that the Defendant's criminal conduct in this case, as well as her criminal history, stems from her mental health and substance-abuse addictions. These are not excuses for criminal behavior. They are, instead, factors the Court must consider in arriving at a sentence that is sufficient, but not greater than necessary to serve the needs of the sentence imposed. The Court commends the government in this case for allowing a sentence to be considered under the mandatory statutory minimum of 240 months, a sentence much too harsh under these circumstances. The Court finds, however, that even a sentence at the bottom of the advisory Guidelines range is excessive and may work to promote not respect, but derision of the law, for the law cannot be viewed as merely a means to dispense harsh punishment without taking

1. A mood disorder, the essential feature of which is a chronically depressed mood that occurs for most of the day, more days than not, for at least two years. During periods of depressed mood, two or more of the following symptoms are present: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration or difficulty making decisions, or feelings of hopelessness. Because the symptoms of dysthymia become so much a part of the

individual's day to day experience, they are often not reported unless directly asked about by a mental health professional. Symptom free intervals last no longer than two months. For the diagnosis of dysthymic disorder to be made, the symptoms must cause clinically significant distress or impairment in social, occupational (or academic), or other important areas of functioning. Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision (DSM–IV–TR)

into account the real conduct and circumstances involved in sentencing.

In particular, the Court finds that a thirty-percent reduction from the mandatory minimum does not reflect the considerable aid offered by the Defendant. With her help, the government was able to initiate and complete its investigation of Laverne Bieghler. At Bieghler's trial, the Defendant, as mentioned, offered cogent testimony over a period of sixty minutes about Mr. Bieghler's drug manufacturing and lifestyle. Accordingly, the Court finds the Defendant's participation in the investigation and conviction of Laverne Bieghler merits a fifty percent reduction. This reduction leaves the Court to impose a sentence of 120 months imprisonment. By the time the Defendant serves this sentence she will be nearly fifty years of age. This sentence compares favorably with the sentence of another co-conspirator, Timothy Lee Smith, sentenced to 140 months by this Court on December 3, 2004. In fact, Mr. Smith, it can be argued, played a substantially larger role in the actual manufacture of methamphetamine, while the Defendant, Ms. Ray, appears to have engaged merely in obtaining ingredients for the manufacture of methamphetamine.

A sentence of ten years imprisonment reflects the seriousness of the crime charged, while at the same time, the Court sincerely hopes, will allow the Defendant the necessary time to confront the mental health and substance abuse challenges she faces and find some way to gain control of her life. The Court also notes that the Defendant will be under supervision for another ten years after her course of imprisonment. This means that the Defendant will be close to sixty years of age before finally being free of the constraints on her liberty caused by her ill-fated decisions to engage in the criminal conduct for which she has been convicted.

## III. CONCLUSION

Accordingly, the Defendant is ordered into the custody of the Federal Bureau of Prisons to be imprisoned for a term of 120 months, to be followed by a supervised release term of 10 years. Other conditions of release and recommendations to the Federal Bureau of Prisons will be included in the Judgment.

IT IS SO ORDERED.